# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MUNDO VERDE PUBLIC CHARTER SCHOOL, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-cv-01710 (APM) |
| DAN SOKOLOV, et al., | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

In January 2017, Dan and Liz Sokolov filed an administrative due process complaint against Mundo Verde Public Charter School and the District of Columbia Office of the State Superintendent of Education, alleging, among other things, that their minor child, A.S., had been denied a free and appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* After an administrative hearing, the Hearing Officer ruled in the Sokolovs' favor and ordered Mundo Verde to reimburse the Sokolovs for costs associated with A.S.'s enrollment in a private school for the 2016–2017 school year. Mundo Verde filed this lawsuit under the IDEA to appeal the Hearing Officer's adverse decision. And, because the Hearing Officer found Mundo Verde solely responsible for the FAPE denial, Mundo Verde named not only the Sokolovs but also the District of Columbia Office of the State Superintendent of Education as defendants in this action.

After Mundo Verde filed its Complaint, however, the District of Columbia reimbursed the Sokolovs for all costs, including tuition, for the 2016–2017 school year, and continued to fund

A.S.'s private-school placement during the 2017–2018 school year. Defendants now move to dismiss the Complaint or, in the alternative, for entry of summary judgment, primarily on the ground that the case is now moot. The court agrees that, as a result of the District's payment of A.S.'s tuition, this matter no longer presents a live case or controversy. Accordingly, the court grants Defendants' Motions to Dismiss.

## II. BACKGROUND

### A. Factual Background

Plaintiff Mundo Verde Public Charter School ("Plaintiff" or "Mundo Verde") is a District of Columbia public charter school that has elected to be its own local education agency under the IDEA for special education purposes. Am. Compl., ECF No. 3, ¶ 3. Mundo Verde is "a school of choice where parents voluntarily enroll their children" on an annual basis. *Id.* Defendants Dan and Liz Sokolov's ("the Sokolovs") minor child, A.S., attended Mundo Verde for several years, including the 2015–2016 school year when A.S. was in third grade. *Id.* ¶¶ 4–5. While at Mundo Verde, A.S. received special education services. *See id.* ¶¶ 5–7; Am. Compl., Ex., Hearing Officer Determination, ECF No. 3-1 [hereinafter HOD], at 4–5.

In May 2016, the Sokolovs began expressing concerns regarding the adequacy of A.S.'s Individualized Education Program ("IEP") at Mundo Verde. *See* Am. Compl. ¶¶ 8–9. In July 2016, after obtaining an independent psychoeducational evaluation, the Sokolovs notified Mundo Verde that if it did not develop an appropriate IEP for A.S. for the 2016–2017 school year, the Sokolovs would seek funding for placement at the Lab School of Washington ("Lab School"), a nonpublic special education day school. *See* Am. Compl. ¶¶ 8–9, 11–12. In response, Plaintiff submitted a placement review referral to Defendant District of Columbia Office of the State

Superintendent of Education ("OSSE"), the state education agency under IDEA. *Id.* ¶ 13. Plaintiff also convened an IEP meeting with the Sokolovs. *Id.*

Before the conclusion of the placement referral and IEP review process, the Sokolovs informed Plaintiff of their decision to enroll A.S. in the Lab School for the 2016–2017 school year. *See id.* ¶ 15. Shortly thereafter, Plaintiff asked the Sokolovs to complete a formal withdrawal form for A.S., which they did. *Id.* ¶¶ 15–17; *see* HOD at 9. Importantly, however, once A.S. formally withdrew from Mundo Verde, Plaintiff lost access to A.S.'s special education records in its student information database, meaning that Plaintiff could no longer revise A.S.'s IEP. *See* Am. Compl. ¶¶ 18–20; HOD at 10. Moreover, after Plaintiff informed OSSE of A.S.'s withdrawal and Plaintiff's loss of access to A.S.'s records, "OSSE notified [Plaintiff] that it was closing the placement review process, precluding [Plaintiff] from convening a change in placement meeting." Am. Compl. ¶ 19.

On January 27, 2017, the Sokolovs filed an administrative due process complaint against Mundo Verde and OSSE. *Id.* ¶ 25. In their complaint, the Sokolovs alleged, among other things, that Mundo Verde and/or OSSE had denied A.S. the right to a FAPE under the IDEA "by failing to provide an appropriate IEP and/or placement for the 2016–2017 school year, when A.S. needed a more restrictive environment than was offered or available at Mundo Verde." *See id.* ¶ 26. After an administrative hearing, the Hearing Officer found in favor of the Sokolovs on this issue. *See id.* ¶¶ 27, 31–32. As relevant here, the Hearing Officer specifically held that Plaintiff was solely responsible for the denial of a FAPE. *See id.* ¶ 32; HOD at 19. According to the Hearing Officer, it was Mundo Verde's responsibility to maintain A.S.'s enrollment "rather than obtain[] his withdrawal as it did," and any lapses by OSSE during the withdrawal process "were not the direct or proximate cause of [A.S.] . . . no longer appearing in the [school database] to permit the IEP

3

and Change in Placement meetings to proceed." HOD at 18. At most, the Hearing Officer explained, OSSE failed to respond to Mundo Verde's inquires or prevent Mundo Verde from taking improper actions. *Id.* The Hearing Officer observed that while such failures could impact "the ultimate responsibility between [Mundo Verde] and OSSE," that issue was not properly before him. *Id.* Accordingly, the Hearing Officer concluded that "OSSE's actions and inactions" during the withdrawal process were insufficient to hold OSSE directly liable to the Sokolovs for denial of a FAPE. *Id.* (reasoning that the "IDEA does not create a type of respondeat superior liability, imputing liability to [state education agencies] for every local deviation from State-created standards" (citation omitted)). As relief, the Hearing Officer ordered Mundo Verde—not OSSE—to reimburse the Sokolovs for costs paid to the Lab School, and to directly fund the remaining costs for A.S.'s placement at the Lab School, for the 2016–2017 school year. Am. Compl. ¶ 34.[1]

Two additional events are critical here, one occurring before Plaintiff filed its initial Complaint and one occurring after. On August 21, 2017, the day before initiating this action, Mundo Verde issued a "Prior Written Notice" to the Sokolovs proposing to continue placement of A.S. at the Lab School for the 2017–2018 school year. *See* Pl.'s Mem. of Points & Authorities in Opp'n to Defs.' Mots. to Dismiss, ECF No. 12 [hereinafter Pl.'s Opp'n], Ex. 1, ECF No. 12-1 [hereinafter Prior Written Notice]. Although Mundo Verde disagreed that A.S. required placement at a private special education day school, it "authorized" the Lab School "to invoice OSSE for [ ] tuition in accordance with OSSE policy and procedure." *Id.*

---

[1] In their administrative due process complaint, the Sokolovs also alleged that OSSE denied A.S. a FAPE "by failing to hold a change in placement meeting on August 30, 2016 when A.S. needed a different placement." *Id.* ¶ 26. Because the Hearing Officer concluded that (a) OSSE could not have held a change in placement meeting for A.S. because he was no longer enrolled in a local education agency as a result of his withdrawal from Mundo Verde, *see* HOD at 19, and (b) OSSE was not directly liable to the Sokolovs for the FAPE denial, *see supra*, the Hearing Officer found in favor of OSSE on this second issue, *see* Am. Compl. ¶ 33; HOD at 19.

4

Then, on or about August 31, 2017, the District paid the Sokolovs the administratively ordered reimbursement in the amount of $51,685 for the cost of A.S.'s education at the Lab School for the entire 2016–2017 school year. *See* Mem. of Points & Authorities in Supp. of D.C.'s Mot. to Dismiss Compl. or, in the Alternative, for Summ. J., ECF No. 8 [hereinafter D.C. Mot.], Decl. of Yvonne Smith, ECF No. 8-2 [hereinafter Smith Decl.], ¶ 4; D.C. Mot., Ex. 2, ECF No. 8-4 [hereinafter Reimbursement Check]. The District also now funds A.S.'s tuition at the Lab School for the 2017–2018 school year. Smith Decl. ¶ 5.

**B.  Procedural History**

Plaintiff filed this IDEA action against the Sokolovs and OSSE on August 22, 2017, *see* Compl., ECF No. 1, and amended its complaint the next day, *see* Am. Compl. In its Amended Complaint, Plaintiff appeals the adverse decision of the Hearing Officer, alleging that the Hearing Officer "erred in multiple respects." Am. Compl. ¶¶ 1, 35; *see, e.g.*, *id.* ¶¶ 36–62. Plaintiff asks the court to reverse the Hearing Officer's Determination ("HOD") and to dismiss all claims raised by the Sokolovs in their underlying due process complaint with prejudice. *See id.* at 12. The Sokolovs filed an answer on October 2, 2017, *see* Answer to Am. Compl., ECF No. 6, and later, on October 18, 2017, moved for dismissal under Rule 12 or alternatively for summary judgment under Rule 56, *see* Parents' Mot. to Dismiss the Compl. or, in the Alternative, for Summ. J., ECF No. 9, Mem. of Points & Authorities, ECF No. 9-1 [hereinafter Parents' Mot.]. On October 12, 2017, the District of Columbia, on behalf of OSSE, also moved for dismissal or alternatively for summary judgment. *See* D.C. Mot.

Defendants raise several legal arguments in their respective motions. Defendants first contend that the case must be dismissed as moot because "the District has, in fact, reimbursed the [Sokolovs] for the special education costs (including placement) for the 2016–2017 school year

5

and because [A.S] has a new placement at [the] Lab School . . . , which is also funded by the District." *Id.* at 2; *see* Parents' Mot. at 1–5. Defendants also argue that the Amended Complaint fails to state a plausible claim for relief under Rule 12(b)(6), and, alternatively, that they are entitled to summary judgment because there are no material facts that remain in dispute. Parents' Mot. at 6–7; *see* D.C. Mot. at 1–2, 6–9. Finally, the District of Columbia separately asserts that OSSE must be dismissed as a defendant because it is *non sui juris*, that is, it does not have the capacity to be sued. *See* D.C. Mot. at 5.

## III. LEGAL STANDARD

Because mootness deprives the court of subject matter jurisdiction, the court first considers Defendants' argument that the case is moot and therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has . . . subject-matter jurisdiction[] . . . .").[2]

When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185

---

[2] While the District of Columbia, acting on behalf of OSSE, argues that the case is moot, it only moves for dismissal under Rule 12(b)(6), or alternatively for summary judgment under Rule 56. *Compare* D.C. Mot., *with* Parents' Mot. at 1–2 (seeking dismissal under Rule 12(b)(1) on mootness grounds as well). A motion to dismiss for mootness, however, "is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction." *Indian River Cty.*, 254 F. Supp. 3d at 18. Thus, the court will treat the District's motion as a Rule 12(b)(1) motion rather than as a Rule 12(b)(6) or Rule 56 motion.

F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Mykonos v. United States*, 59 F. Supp. 3d 100, 103–04 (D.D.C. 2014) (applying rule in mootness context). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## IV. DISCUSSION

### A. Mootness

#### 1. *Is This Matter Moot?*

The threshold question in this case is whether the claims asserted in Plaintiff's Amended Complaint are moot, thereby depriving the court of subject matter jurisdiction. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation marks omitted); *accord District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010). "The initial 'heavy

burden' of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies[.]" *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations omitted).

The court agrees that this case is moot. There is no longer any "effectual relief" that the court can award Plaintiff. *See Honeywell Int'l*, 628 F.3d at 576. Plaintiff asks the court to reverse the HOD and dismiss all claims in the Sokolovs' underlying due process complaint. *See* Am. Compl. at 12. If granted, such remedy would relieve Plaintiff of the order requiring it to reimburse the Sokolovs for the costs of A.S.'s education at the Lab School for the 2016–2017 school year. The District, however, already has reimbursed the Sokolovs for the 2016–2017 school year. Having been reimbursed, the Sokolovs cannot legitimately seek to compel Plaintiff to pay for the very same educational expenses, as such a request would constitute an improper demand for a windfall award. Accordingly, the District's reimbursement of the Sokolovs for the very expenses Plaintiff was ordered to pay by the HOD moots out any effective relief that this court could grant Plaintiff by reversing the HOD. *Cf.* 13B Wright et al., *Federal Practice & Procedure: Jurisdiction* § 3533.2.1 (3d ed. 2018) ("Action by a nonparty that has the same effect as self-help . . . may moot a claim."); *Dep't of Educ. v. Carl D.*, 695 F.2d 1154, 1156 (9th Cir. 1983) (holding that the state department of education's appeal of an adverse ruling concerning its responsibility for a child's education under the IDEA was moot where a different state agency later provided the care in question, and reasoning that the question "whether the DOE or some other government agency or department should pay for the treatment in question [wa]s not a matter to be resolved by litigation between the parties" in that case).

To avoid this consequence, Plaintiff asserts that its request for "declaratory relief" sustains this matter as a live case or controversy. Plaintiff claims that "[t]he hearing officer's decision not

8

only ordered Mundo Verde to pay the cost of tuition at the Lab School for the 2016–2017 school year, but also dictated elements of [A.S.'s] special education placement moving forward." Pl.'s Opp'n at 4. According to Plaintiff, the latter decision will have "lasting effects on the parties' substantive rights because [A.S.] is still enrolled at Mundo Verde and Mundo Verde is charged with making IEP and placement decisions for [A.S.] at least annually." *Id.* It is not at all clear which "elements" of A.S.'s education concern Plaintiff, but greater precision would not save its case in any event. Plaintiff already placed A.S. in the Lab School for the 2017–2018 school year and authorized the Lab School to continue to invoice OSSE for A.S.'s tuition for that year. Prior Written Notice; *see* Pl.'s Opp'n at 4. Moreover, A.S. is currently in the fifth grade, *see* Prior Written Notice; *cf.* Am. Compl. ¶ 5, and Mundo Verde does not teach students beyond the fifth grade, *Mundo Verde*, http://www.mundoverdepcs.org/ (last visited June 6, 2018);[3] *see* Reply to Pl.'s Opp'n to Defs.' Mots. to Dismiss the Compl. or, in the Alternative, for Summ. J., ECF No. 13 [hereinafter Parents' Reply], Ex. A, Decl. of Elizabeth Sokolov, ECF No. 13-1 [hereinafter Sokolov Decl.], ¶ 3. A.S. thus will "age out" of Mundo Verde after the 2017–2018 school year, which means that the Sokolovs will have to enroll A.S. in another local education agency to seek special education services for A.S. in future school years. *See* Sokolov Decl. ¶ 5. Therefore, even if Plaintiff is correct that the HOD will have "lasting impacts" on future decisions made with respect to A.S.'s IEP and school placement, *see* Pl.'s Opp'n at 4–5, Plaintiff will not be responsible for those elements; some other school will be. Accordingly, because there is no relief—declaratory

---

[3] The court may take judicial notice of representations made on Plaintiff's website. *See Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13, 17–18 (D.D.C. 2017) (noting, in context of deciding a Rule 12(b)(1) and 12(b)(6) motion, that a court may consider matters that are subject to judicial notice); *cf. Nat'l Pub. Radio, Inc. v. FEMA*, No. 17-cv-91, 2017 WL 5633090, at *8 n.6 (D.D.C. Nov. 21, 2017) ("Federal Rule of Evidence 201 allows a court to take judicial notice of 'a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned.' Both of these conditions apply to a description of the [defendants' grant program] found on the defendants' public website." (alterations in original) (citation omitted)).

or otherwise—that the court could grant that would remedy potential future harm to Plaintiff, this matter is moot.

### 2. *Does an Exception to the Mootness Doctrine Apply?*

There are, of course, exceptions to the mootness doctrine, and Plaintiff invokes two such exceptions here. First, Plaintiff asserts that the Amended Complaint raises issues that are "capable of repetition, yet evading review." *See id.* at 3, 5. Second, Plaintiff contends that it will suffer "collateral legal consequences" if the HOD is allowed to stand. *See id.* at 3, 6. The court addresses both exceptions in turn.

#### a. <u>Capable of repetition, yet evading review</u>

The "capable of repetition, yet evading review" exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subject to the same action again." *Doe*, 611 F.3d at 894 (alteration in original) (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 307 (D.C. Cir. 1991)). In this case, the court need not dwell on whether the first requirement is met, because the court has little trouble concluding that Plaintiff has failed to satisfy its burden of establishing the second requirement.

Plaintiff identifies two "legal issues" that it claims are "almost certain to . . . recur[.]" *See* Pl.'s Opp'n at 6. Plaintiff frames the first issue as "whether Mundo Verde provided or offered a [FAPE]." *Id.* At least as applied to A.S., Plaintiff will not confront this question again for the reasons already discussed. But even with respect to other children with disabilities generally,[4] there is no reasonable expectation that Plaintiff "will again 'be aggrieved by [a] *similar application*

---

[4] *See Doe*, 611 F.3d at 895 (explaining that where the District of Columbia is "the same complaining party" in an IDEA case, the application of the second prong turns on whether there is a reasonable expectation that the District will "repeatedly confront the issue *as to disabled children generally*" (emphasis added) (internal quotation marks omitted)).

10

*of the IDEA.*'" *See Doe*, 611 F.3d at 895 (emphasis added) (quoting *Jenkins*, 935 F.2d at 308). The issue in this case—the denial of a FAPE—is inherently fact-dependent, particularly where, as here, the denial is based on the inappropriateness of a student's IEP and school placement. *See, e.g.*, *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017) ("To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate *in light of the child's circumstances*." (emphasis added)); *see also* HOD at 13, 15. In other words, Plaintiff may be asked to defend its capacity to provide a FAPE to some student in future administrative proceedings, but the court cannot say that there is a reasonable expectation that Plaintiff will be aggrieved by a similar application of the IDEA in such proceedings.

For its part, Plaintiff relies on two cases, *Doe* and *Jenkins*, but they do not dictate a different result. Both involved pure legal issues. *See Doe*, 611 F.3d at 895 ("an IDEA hearing officer's authority to revise DCPS-imposed discipline upon finding that an infraction is not a manifestation of a disability"); *Jenkins*, 935 F.2d at 308 ("the degree of specificity required of the District in providing notice to parents under the IDEA"). Here, by contrast, the "legal wrong complained of by the plaintiff" is unlikely to recur precisely because it is so dependent on the facts of each case. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 323–24 (D.C. Cir. 2009); *see also People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005) ("The essential point is that the case before us is highly dependent upon a series of facts unlikely to be duplicated in the future. . . . [A] legal controversy so sharply focused on a unique factual context . . . rarely present[s] a reasonable expectation that the same complaining party [will] be subjected to the same actions again." (internal quotation marks omitted)).

11

Plaintiff's argument with respect to the second "recurring" issue fails for similar reasons. Plaintiff frames the second issue broadly as "whether Mundo Verde is responsible for tuition reimbursement for a unilateral private placement." *See* Pl.'s Opp'n at 6. If by framing the question in that way, Plaintiff means to suggest that it may be held liable for a unilateral private placement in similar circumstances in the future, then the question posed is too fact-bound and therefore unlikely to be duplicated in the future. As the HOD makes clear, the Hearing Officer found Mundo Verde solely responsible to the Sokolovs based on the particular facts of the case, not on a generally applicable legal principle. *See* HOD at 18 (finding that the "lapses by OSSE were not the direct or proximate cause of [A.S.] being withdrawn from [Mundo Verde]" and thus were insufficient "to hold OSSE directly liable to [the Sokolovs] for denial of a FAPE").

On the other hand, if what Mundo Verde means to say is that the HOD establishes, as a matter of law, that it will be held responsible for the costs of a unilateral private placement in *all future similar cases*, then Mundo Verde misreads the HOD. Although Mundo Verde argued at the hearing that "tuition payments for a nonpublic school are not the responsibility of the [local education agency] Charter and thus reimbursement can only be required from OSSE," the Hearing Officer expressly found "the funding mechanisms and relationship between [a state and local education agency] to be well beyond the scope of this case." *Id.* at 18 n.116. Stated differently, the Hearing Officer did not address the pure legal question of whether OSSE can *ever* be liable, whether directly or vicariously, for the costs of a unilateral private placement. The decision to hold Mundo Verde solely responsible rested on the facts of the case; an abstract legal question that the Hearing Officer did not reach therefore cannot sustain this action as a live case or controversy.

### b. Collateral consequences

Having concluded that the issues raised in Plaintiff's Amended Complaint are not "capable of repetition, yet evading review," the court turns to the "collateral consequences" exception to the mootness doctrine. *See* Pl.'s Opp'n at 3. Plaintiff acknowledges that the collateral consequences exception typically arises "in the criminal appeal[s] context." *Id.*; *see, e.g.*, *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011). Nevertheless, Plaintiff argues that the exception applies here because "Mundo Verde may be subject to collateral legal consequences if the [HOD] is allowed to stand," Pl.'s Opp'n at 6; *see also id.* at 3 (citing two out-of-circuit district court cases in which the court applied this exception in the IDEA context).

Specifically, Plaintiff claims that the Hearing Officer's conclusion that Plaintiff violated the IDEA could have "potential consequences with respect to monitoring by the state education agency and charter school authorizer." *Id.* at 6. For example, Plaintiff notes that as the state education agency, OSSE is required by regulation to "monitor the implementation of the IDEA Part B, make annual determinations about the performance of each [local education agency ('LEA')], enforce compliance with IDEA Part B, and report annually on the performance of . . . each LEA." Pl.'s Opp'n at 6–7 (citing 34 C.F.R. § 300.600). In carrying out these monitoring and enforcement responsibilities, OSSE tracks and reports findings made through due process hearings and uses those findings in making annual determinations about an LEA's performance. *See* Pl.'s Opp'n at 7; Pl.'s Opp'n, Ex. 3, Special Education Monitoring & Compliance Manual (IDEA Part B), ECF No. 12-3, at 4, 14–15. Additionally, Plaintiff asserts that it is subject to monitoring by its charter authorizer, the District of Columbia Public Charter School Board ("PCSB"), which also relies on hearing officer determinations in monitoring charter schools' compliance with the IDEA. Pl.'s Opp'n at 7 (citing Pl.'s Opp'n, Ex. 4, DC Public Charter

13

School Board Monitoring & Compliance Policy, ECF No. 12-4). One of the potential consequences of noncompliance under District of Columbia law, Plaintiff stresses, is "revocation of the charter and closure of the school by the [PCSB]." *Id.* (citing D.C. Code § 38-1802.13(a)).

These claims of potential "collateral consequences" do not save Plaintiff's case. The IDEA case cited by Plaintiff in support of its position that the collateral consequences exception applies outside the context of criminal appeals and habeas petitions recognizes that "the scope of this exception is difficult to discern and its application is relatively rare." *Mars Area Sch. Dist. v. C.L. ex rel. K.B. ("Mars I")*, No. 2:14-cv-1728, 2015 WL 6134116, at *5 (W.D. Pa. Oct. 16, 2015) (internal alterations and quotation marks omitted), *appeal docketed*, No. 15-3780 (3d Cir. Nov. 20, 2015); *see* Pl.'s Opp'n at 3. Thus, whether the "collateral consequences" exception even applies to IDEA cases is an open question. The court need not, however, resolve that thorny legal issue, for Plaintiff cannot satisfy the exception in any event. Assuming that the collateral consequences exception applies in the IDEA context, future action by OSSE or PCSB is pure speculation at this juncture. *See San Diego Cty. Office of Educ. v. Pollock*, No. 13-cv-1647, 2014 WL 2860279, at *12 (S.D. Cal. June 20, 2014). Thus, the collateral consequences exception cannot sustain this matter as a live case or controversy.

For the reasons stated above, the court finds that Plaintiff's appeal of the HOD is moot and that no exception to the mootness doctrine applies here.

### B. Vacatur

If the case is determined to be moot, and the court has concluded that it is, Plaintiff asks the court to vacate the HOD. *See* Pl.'s Opp'n at 7. "[T]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below when a civil case becomes moot while awaiting appellate review." *Sands v. NLRB*, 825 F.3d 778, 785 (D.C. Cir. 2016) (alterations in

original) (internal quotation marks omitted). The purpose of vacatur is "to 'clear[] the path for future relitigation of the issues' and 'eliminate[] a judgment, review of which was prevented through happenstance.'" *Id.* (alterations in original) (quoting *U.S. Bancorp Mortg. Co. v. Bonner*, 513 U.S. 18, 22–23 (1994)). As relevant here, "[v]acatur in the event of mootness applies equally to unreviewed administrative orders." *Id.*; *see also A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329 (1961) (extending application of principle to "unreviewed administrative orders" and holding that "the District Court should have vacated the order which it declined to review"); *Am. Family Life Assur. Co. of Columbus v. FCC*, 129 F.3d 625, 630 (D.C. Cir. 1997) ("Since *Mechling* we have, as a matter of course, vacated agency orders in cases that have become moot by the time of judicial review."). Thus, the practice has "been employed by district courts sitting in an appellate capacity, including in review of IDEA cases." *Mars I*, 2015 WL 6134116, at *6 (quoting *Pollock*, 2014 WL 2860279, at *13); *accord L.K. ex rel. Henderson v. N.C. State Bd. of Educ.*, No. 5:08-cv-85, 2011 WL 861181, at *5 (E.D.N.C. Feb. 18, 2011) (citing cases).

Because vacatur is derived from principles of equity, courts look "to notions of fairness when deciding whether to use the remedy." *Sands*, 825 F.3d at 785. "Courts usually vacate a judgment 'when mootness results from unilateral action of the party who prevailed below' or from circumstances beyond the control of the parties." *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 98 (2009) (Stevens, J., concurring in part and dissenting in part)); *see also Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 949 (D.C. Cir. 2005) ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." (quoting *Bancorp*, 513 U.S. at 25)). By contrast, "when a case becomes moot because the parties reached a settlement—and the petitioner therefore 'voluntarily forfeited' a remedy in court—vacatur is typically inappropriate." *Sands*, 825 F.3d at 785 (citing

15

*Bancorp*, 513 U.S. at 22–25). In short, "[t]he principal condition" that a court should consider in determining whether vacatur is appropriate "is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *See Select Milk Producers*, 400 F.3d at 949 (alteration in original) (quoting *Bancorp*, 513 U.S. at 24); *cf. Am. Bar Ass'n v. FTC*, 636 F.3d 641, 649 (D.C. Cir. 2011) (noting that the "*Bancorp* presumption" against vacatur is inapplicable where "the party who would get relief from the judgment below[] did nothing to render th[e] case moot").

Although the foregoing principles are straightforward, the odd procedural posture of this case makes the question of vacatur somewhat more complex. On the one hand, Plaintiff took no voluntary action to moot its appeal. Instead, the appeal became moot as a result of actions taken by the District in reimbursing the Sokolovs for tuition for the 2016–2017 school year, as well as the mere passage of time. *See* Sokolov Decl. ¶ 5 (noting that A.S. will age out of Mundo Verde after the 2017–2018 school year). Such circumstances counsel in favor of vacatur. *See Pollock*, 2014 WL 2860279, at *13 (holding that vacatur was appropriate where "the party seeking review[] took no voluntary action to moot th[e] case"); *Mars I*, 2015 WL 6134116, at *7 (same); *see also Columbian Rope Co. v. West*, 142 F.3d 1313, 1318 (D.C. Cir. 1998) ("[A] court declining to review an agency order on the ground of intervening mootness should vacate that order, at least when the mootness is a result of happenstance.").

On the other hand, this case is unique. It is the District, not the Sokolovs, whose actions have largely mooted Plaintiff's appeal, and yet it is the Sokolovs who could potentially stand to lose if the court grants Plaintiff's request to vacate the HOD. Because the result of vacatur is that "the slate is wiped clean," leaving the parties "in the same position they were in before the [HOD] was issued," *Mars I*, 2015 WL 6134116, at *7, vacatur could, in theory, impact the Sokolovs' right under the IDEA to seek attorneys' fees and costs incurred during the administrative proceedings

16

below.[5] *See District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) ("[T]he IDEA allows parents who are 'prevailing part[ies]' to recover attorney's fees incurred in . . . administrative . . . proceedings." (first alteration in original) (quoting 20 U.S.C. § 1415(i)(3)(B)(i)(I))). Basic "notions of fairness" therefore require the court to consider what effect, if any, vacatur of the HOD will have on the Sokolovs' status as a "prevailing party" entitled to seek attorneys' fees under the IDEA.

After review of the relevant case law, the court has little concern that vacatur would adversely impact the Sokolovs' right to recover attorneys' fees and costs. Although no court in this jurisdiction has addressed this issue under the IDEA, D.C. Circuit precedent in other contexts provides ample guidance. In *Grano v. Barry*, the D.C. Circuit held that where a court dismisses an appeal based on mootness grounds and vacates that part of the district court's judgment, that decision "is not dispositive as to the issue of attorneys' fees." *See* 733 F.2d 164, 168 & n.2 (D.C. Cir. 1984); *see also Grano v. Barry*, 783 F.2d 1104, 1108–09 (D.C. Cir. 1986) (agreeing with district court's conclusion that plaintiffs were prevailing parties for attorneys' fees purposes under 42 U.S.C. § 1988 in a subsequent appeal). Similarly, in *National Black Police Association v. D.C. Board of Elections*, the D.C. Circuit vacated the district court's injunction on appeal after finding that the matter had been rendered moot by subsequent action taken by the city council 52 days

---

[5] In their reply brief, the Sokolovs argue that the "only possible explanation" for Plaintiff's request for vacatur here "is to alleviate [Plaintiff's] potential liability to reimburse the [Sokolovs] for their attorney's fees under the IDEA for their successful appeal." Parents' Reply at 3. This argument is confusing, as it is Plaintiff, and not the Sokolovs, who appealed the HOD. And, in any event, the court's decision to dismiss Plaintiff's appeal of the HOD as moot would not render the Sokolovs successful *in this litigation*. *See District of Columbia v. Nahass*, 699 F. Supp. 2d 175, 181–82 (D.D.C. 2010) (explaining that a fee applicant must be considered a "prevailing party" to be entitled to attorneys' fees under the IDEA, and "secur[ing] a favorable ruling on mootness grounds" is "not enough to establish 'prevailing party' status"); *see also infra* note 7 (outlining the three-part test to be applied in determining whether a party is a "prevailing party" for purposes of attorneys' fees). Thus, the court only will address the potential effect of vacatur on the Sokolovs' ability to seek attorneys' fees incurred in the administrative due process proceeding. *See generally Green v. District of Columbia*, 102 F. Supp. 3d 15, 20 (D.D.C. 2015) ("A 'court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party [in an administrative proceeding] who is the parent of a child with a disability.'" (alteration in original) (quoting 20 U.S.C. § 1415(i)(3)(B)(i))).

17

after the injunction was issued. *See* 168 F.3d 525, 527 (D.C. Cir. 1999). Thereafter, the district court granted the plaintiffs' request for attorneys' fees under 42 U.S.C. § 1988, and the defendant appealed. *See id.* On appeal, the D.C. Circuit held that "[t]he fact that the case was moot by the time of the appeal [did] not alter the fact that the injunction altered the legal relationship between the parties when it was issued." *Id.* at 528. "The [injunction] order was not moot when issued," and, accordingly, "the plaintiffs secured a real-world vindication of their First Amendment rights." *Id.* Thus, although the D.C. Circuit has not squarely held that vacatur does not foreclose prevailing party status in the IDEA context, *Grano* and *National Black Police Association* strongly suggest that the Circuit would so rule. *Cf. Texas v. United States*, 49 F. Supp. 3d 27, 40–42 (D.D.C. 2014) (applying *Grano* and *National Black Police Association* in a voting rights case).[6]

Other courts specifically have ruled in the IDEA context that intervening mootness will not necessarily prevent "prevailing parties" from seeking attorneys' fees incurred in the underlying administrative proceedings. In *E.D. v. Newburyport Public Schools*, the parents sought attorneys' fees under 20 U.S.C. § 1415(i)(3)(B) as prevailing parties at a hearing before a state bureau of special education appeals, but the district court granted summary judgment in favor of the defendant school district on mootness grounds based on the family's subsequent move outside the school district. *See* 654 F.3d 140, 141–42 (1st Cir. 2011). On appeal, the First Circuit declined to decide whether the parents in fact qualified as "prevailing parties" under the IDEA, but did hold that the move "did not moot the claim for fees incurred in seeking the administrative order issued before the move, based on a finding that [the school district] had failed to do its part to produce an

---

[6] Other courts of appeals similarly have concluded that intervening mootness will not necessarily deprive a party of "prevailing party" status for purposes of attorneys' fees, even where the underlying decision is vacated. *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1294 & n.2 (11th Cir. 2010) (citing cases). In particular, the First Circuit's decision in *Diffenderfer v. Gomez-Colon* provides a helpful explanation of the difference between a reversal on the merits and vacatur of a moot case. *See* 587 F.3d 445, 453–54 (1st Cir. 2009).

18

adequate IEP." *Id.* at 143. The First Circuit observed that the district court's decision "appear[ed] to rest on a legal theory at odds with th[e] court's prior holding under a comparable prevailing party statute, 42 U.S.C. § 1988(b), that eligibility for a fee award is not lost even when subsequent developments render a claim moot overall." *Id.* at 143–44 (citing *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454–55 (1st Cir. 2009)). The court explained that "in the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." *Id.* at 144 (quoting *Diffenderfer*, 587 F.3d at 453). Thus, the court concluded, if "the administrative order did make the [plaintiffs] 'prevailing parties' before they moved, [then] they were still prevailing when they left town." *Id.*

At least one district court has extended these general principles to vacatur based on mootness in the IDEA context. In *Mars I*, a Pennsylvania district court determined that the hearing officer's decision should be vacated based on mootness, but nevertheless allowed the plaintiff to file a motion for attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i). *See* 2015 WL 6134116, at *7–8. The court reasoned that if the hearing officer's decision made the plaintiff the "prevailing party" in the administrative proceedings prior to the intervening act of mootness, then the plaintiff would continue to be a prevailing party for purposes of attorneys' fees. *Id.* at *8. The same court later affirmed its earlier decision, when ruling on the fees' motion, stating that "by obtaining an enforceable order against the School District that changed the legal relationship between the parties," the plaintiff "did indeed prevail at the hearing before the intervening act of mootness." *Mars Area Sch. Dist. v. C.L. ("Mars II")*, No. 2:14-cv-1728, 2015 WL 8207463, at *3 (W.D. Pa. Dec. 7, 2015). Thus, the court held that the plaintiff was entitled to an award of attorneys' fees and costs under the IDEA. *See id.* at *3–9.

19

In light of the foregoing case law, the court finds that vacatur almost certainly would not necessarily deprive the Sokolovs of their right to seek attorneys' fees incurred during the administrative due process proceedings below. If the Sokolovs can establish themselves to be "prevailing parties"—as they appear to be[7]—vacatur of the HOD based on mootness cannot "reverse[]" the relief awarded to the Sokolovs in the HOD. *See Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003). If they were prevailing parties before the District made the tuition payments, they remain so afterwards.

Accordingly, the court grants Plaintiff's request to vacate the HOD.

## V. CONCLUSION

For the foregoing reasons, the court hereby dismisses this case as moot and vacates the Hearing Officer's Determination. A separate order accompanies this Memorandum Opinion.

Dated: June 8, 2018

Amit P. Mehta
United States District Judge

---

[7] *See generally Straus*, 590 F.3d at 901 (noting that the D.C. Circuit has adopted a three-part test for determining "prevailing party" status for purposes of attorneys' fees: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003))).